I call the first case for argument today before us, and that's Edwards v. Hovensa. Mr. Jordan. Good morning, Your Honors. Counsel, if you please. I should also tell you that we have read the briefs very thoroughly, and whatever we have from the appendices. So don't be surprised if we break into your arguments with questions. It's not that we don't want to hear you, it's that we have questions. Yes, Your Honor. I'm not sure I've ever completed an appellate argument without questions. It would be very dull if you didn't get questions. If it pleases the Court, the issue in this case is whether an arbitration agreement between an employer and its employee that extends to personal injury claims, including those against the owner of the premises on which the employer's workforce is located, is, without more, substantively unconscionable. The District Court, with little explanation and no case authority whatsoever, found that it was. Hovensa submits that this finding was inconsistent with controlling Supreme Court precedent that holds that arbitration agreements must be judged according to the rules that are generally applicable to all contracts, and that, in making those decisions, a court cannot assume that the arbitration process itself favors one party over the other. Let me interrupt for a minute. Bill, did he reserve time? Yes. Okay. Would you like to reserve time for rebuttal? Sorry to break in, but it's important. I'm sorry, Your Honor. I was warned and I forgot to do it. I would like to reserve five of the 15 minutes. Fine. Okay, Bill. Fine. Okay, thank you. In 1985, the U.S. Supreme Court, in its Mitsubishi Motors ruling, stated, We're well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution. In that case, the court held that private actions under the federal antitrust laws were subject to arbitration and subject to the Federal Arbitration Act. Here, we believe that the district court's decision reflects, in this single respect, that is, its finding on substantive conscionability, because we think the district court got it right on all other issues. But in this single respect, reflects just such an outdated suspicion of the appropriateness or suitability of arbitration that the Supreme Court in Mitsubishi, and many times since, has said was intended to be done away with by the Federal Arbitration Act. What choice did Edwards really have but to sign? I mean, he was sort of stranded here, and did he really benefit by agreeing to arbitration? Well, I think you've asked two questions, Your Honor, with regard to whether he benefited. Certainly, he benefited. There are benefits that flow from arbitration that flow equally to both sides in any dispute. But I think the case law is replete with discussions of that. So, yes, he benefited. In terms of whether he had a choice, the issue of contract formation and procedure was not addressed in the trial court. I don't think there was an argument made. There certainly wasn't a finding made that it was not a validly formed contract. With regard to whether he had a choice, I think the court did address that in finding that there was procedural unconscionability or that it was a contract of adhesion. We don't necessarily concede that point, but we understand that it's not before this court. The substantive conscionability point is the one before this court, and you must have both to invalidate the contract. Substantive unconscionability, of course, refers to specific terms within the contract that unreasonably favor one party over the other and which were not truly assented to by the disfavored party. I do not believe there's any assertion by Mr. Edwards in this case, and certainly there was no finding by the district court that any specific provision of the arbitration agreement relating, for example, to the arbitration process and how it's to be administered or carried out in any way disfavored or was substantively unconscionable. The finding of the court was based solely on the fact that the contract included the assertion of personal injury claims against Provenza, a named, intended third-party beneficiary and a party with whom Wyatt was in contractual privity. And the district court's subjective conclusion that the consideration that Mr. Edwards received for signing this contract was too insignificant in the court's view to justify his forgoing a judicial forum in favor of an arbitral forum. The second restatement requires that in order to support a finding of substantive unconscionability based on the value received by one of the parties, that there must be a gross inadequacy in the values exchanged, a gross inadequacy. In this case, the district court expressly found that Mr. Edwards received employment in return for signing the agreement. And in addition to that, even though I don't think it was discussed in the district court opinion, there was mutuality of obligation with respect to the arbitration agreement. That is, Wyatt, who was the other party to the contract, was required to arbitrate with Mr. Edwards those types of claims that were specifically made a subject of arbitration that were within the scope of the arbitration agreement. Do you think this is a broad arbitration agreement or a narrow arbitration agreement? Well, I thought about that, Your Honor, and I'm not sure. I will tell you that the other side makes the point that it is not global in the sense that it applies to any claims between the parties. It applies to specifically defined claims. I believe that is the case because it refers in the agreement to claims that would not be subject to the collective bargaining agreement in place. And I believe the National Labor Relations Act imposes legal restrictions on how far employers can go in entering into arbitration agreements with employees who those unions represent. And I believe that this agreement was in all probability tailored to avoid an actual or claimed violation of the National Labor Relations Act. And so the answer to my question, I mean, I ask the question because the precedent that certain things follow from a broad arbitration agreement and others follow from a narrow one. I think with regard to the types of claims that are specified in the agreement, Your Honor, it is a broadly worded agreement because it says any and all claims related to. And when we talk about whether the clause that deals with personal injury claims is narrow and broad, this court, and I believe your battaglia decision said that use of the words arising in or arising out of or arising under are generally given broad construction in the context of enforcing arbitration agreements. So we would take the position that it is a broadly worded agreement but limited to the types of claims specified therein. You cited Supreme Court authority. Isn't this really a matter of local law? Your Honor, it certainly was a matter of local law in its initiation. And we contend that the district court misapplied or misconstrued local law. But it did so in a way that violated federal mandates. Federal what? I didn't hear the last part. Federal mandates, Your Honor. Mandates, okay. The Supreme Court, this court, other federal circuits have held that states, including state courts, cannot impose restrictions on arbitration agreements and their enforceability that do not apply equally across the board to all types of contracts. And the court in this case did that, we think, by conclusively deciding that arbitration had limited or no advantages to a claimant in a personal injury case, at least with respect to claims against third-party beneficiaries of the agreement. There is no case law, we think, to support that. And all the case law in the federal sector would say that was inappropriate to make that assumption. So while, yes, contract formation, defenses to contract enforcement, of course, are matters of state law in their inception, state law can be applied, can be enacted or applied by the courts in such a way as to violate federal law. We think that's what happened here. Finally, I'll just say with regard to the third-party beneficiary analysis that what the plaintiff, what Edwards argues for is an application of third-party beneficiary analysis that would set a special standard for arbitration agreements in the personal injury context outside the generally applied rules of third-party beneficiary analysis. Thank you. Thank you very much. We'll hear you on rebuttal. Ms. Cameron? Good morning. Good morning. Your Honors, as you have indicated, I would rest on my grief as to the jurisdiction of the court and whether or not the court should have followed the superior court. I will go directly to argument as to whether this DRA, discrete resolution agreement, single-page agreement regarding the application process on the facts of this case, is substantively unconscionable. Could you please tell me, I couldn't figure it out, what is the nature of the injury to Mr. Edwards? I gather something sprayed on him? Your Honor, he was exposed to chemicals and he also specifically received... One second, Your Honor, I will... I ask it because of something in your brief with respect to where the injury took place. You did argue that. I don't mean to set you off track. That's all right. Your Honor, I can get back to you on that. Yeah, that's okay. Your Honor, as was conceded below, we believe it was conceded below, this contract is procedurally unconscionable. Mr. Edwards had no bargaining choice. It was forced upon him. And the first presumption as to arbitrability is that it's based on an agreement that's freely bargained for without coercion. Your Honor, this court in Alexander with regards to substantive unconscionability stated that it concerns the actual terms of the contract and examines the relative fairness of the obligation. This court proceeded to say indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party. Our point here is even if the employer had bargained for an agreement with its employee, the third-party clause granting or requiring the employee to arbitrate with not only OVENSA but contractors and unknown contractors who are not known at the time of the agreement constituted unfair surprise and is substantively unconscionable. Your Honor, this court and courts throughout this country have held that although oppression may arise from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice, that's oppression. It also says that one need not prove oppression if there is unfair surprise to the innocent party. Your Honor, I need at this point to distinguish this court's holdings in Inouye Prudential and Pritzker. There the court made a broad case for agency as to unconscionability but going back to this court's decision in Rome v. Polina, this court held, and I quote, that once... That's okay. Take a minute to find what you need. Your Honor, in Rome... This court held to be a third-party beneficiary. One must promise the parties to the agreement must have intended that person to be a third-party beneficiary and that here the parties are my client A and Wyatt B. And C, Provenza, is supposed to be the third party. The third party must have also intended to confer a gift or benefit to C. And the promise, the contract made, must be to benefit C. If you examine the contract here on the Virgin Islands Law, which I submit you must apply to this question, as to whether Provenza is a true third-party beneficiary, under the restatement, we submit that under this contract Provenza is not a true third-party beneficiary. The contract as was conceded was one of adhesion. In this case, my client had no real opportunity to dicker over any of the terms. Indeed, his affidavit states, all he was told about this agreement... Imagine this, Your Honor. He was hired in Texas. He was flown down here by Wyatt. Now, the reason I, as the counsel for plaintiff, know they presented him with this agreement because we have been making the argument that Wyatt was not presenting its off-island hires. Ms. Cameron, how does it differ from any ordinary employment contract which provides for arbitration and which one could certainly argue the employee is not on an equal bargaining plane with the respective employer? Your Honor, Virgin Islands policy, because of the high... You have to look at... Non-USC requires the court to look at the common law of the state in which it sits. In law and equity, as to the question of unconscionability... Well, then, is your answer that notwithstanding the general... Because, as you know, the prevailing authority is that employment arbitration agreements are enforceable. There was a time when I didn't think so. I thought you couldn't require arbitration of a federal statute, for example. But the Supreme Court has shown that my prior view was incorrect. And so, is your answer that notwithstanding the general view, President, that employment contracts to arbitrate with arbitration clauses are enforceable, there's something different about Virgin Islands law? I don't understand what you're saying. Your Honor, what I am saying is, not that there is something entirely different about Virgin Islands law, but these contracts that are employed in the Virgin Islands are so broad, even that they extend the right to arbitrate. My client is not only agreeing to arbitrate claims he may have with his employer. He's being forced to agree to arbitrate claims with unknown third parties where there's no mutuality of agreement, no bilateral agreement, no real mutuality to arbitrate the same issues. He has to arbitrate, but Juvenza doesn't necessarily have to arbitrate any of the issues. Even Wyatt does not have to arbitrate any of the issues. Only claims my client can agree are subject to arbitration. There are cases like Moore v. Juvenza and St. Rose v. Juvenza, Virgin Islands cases that seem to the Superior Court compelled arbitration. How do you get around those? Your Honor, I get around those because those cases, a couple of them are on appeal because the decisions were dismissed before this Court said in Lloyd, I believe it was in Lloyd, that the Court must not dismiss the case. It must stay arbitration, but I don't think claims for stay were made in those cases. So those cases are on appeal before the appellate division of the District Court. With respect to Moore, Moore's case went to arbitration because that client wanted to give up on the process. Let me ask you this. You said something earlier. This is a diversity case, is it not? Correct, Your Honor. Before Virgin Islands Code Section 2 gives the District Court the judicial power of the territory, would that extend that power to a diversity case? Your Honor, at the time this claim arose, the Supreme Court of the Virgin Islands was not yet constituted under the Revised Organic Act, which grants the District Court concurrent jurisdiction over claims of local law. Yes, even the District Court is sitting in diversity because it is not constituted under Article 3 but Article 4, and it has special jurisdiction. Yes, it had jurisdiction over those cases. But doesn't 1612b vest local matters in the Superior Court? Wouldn't that divest the District Court under that other section? Do you follow what I'm saying? Yes, Your Honor, I follow what you are saying, but still the District Court is a court of dual jurisdiction. It has not only the appellate, it has not only the direct trial court jurisdiction, but at the time it had the appellate jurisdiction, and this court on law as to this issue said the District Court can rule on matters of local law. So we could have two courts making local law rulings. Exactly, Your Honor. Isn't that a bit unworkable? That's why we're here. Okay. Your Honor, almost a century ago, the Supreme Court stated the right to sue on defending courts is the alternative to force. In an organized society, it is the right conservative of all other rights and has as its foundation an orderly government. It is one of the highest and most essential privileges of citizenship. This was stated in Chambers v. Baltimore and Ohio Railroad, 207 U.S. 142, 1907. Almost 100 years ago, this court recognized that right, and even the Supreme Court cases that are applicable to this issue, when they consider the waiver of the right to do it, they require it to be knowing and voluntary. The presumption of arbitrability underlying that is mutual knowing agreement to arbitrate without force or coercion. And the FAA itself says that the court may set aside a contract or find a contract invalid or unforceable if it finds that it is unconscionable of common law. And we find under the Virgin Islands Common Law, we submit this contract was unforceable and invalid. Your Honor, I would like to address one other issue. Okay, but your yellow light is on. I noticed, Your Honor, the appellant contends that some of the arguments made in the appeal was not made below, and this court in Wagner v. Penwest Farm Credit stated that an appellate court may uphold a judgment on any proper theory, even if not raised by the parties first in the district court, as long as there is no prejudice to the other party. And we submit that on the basis of this claim, there is no prejudice. Thank you, Your Honor. Thank you very much. Mr. Jordan, you have reserved five minutes, but let me ask you to address the following, since it's really a rebuttal. As I understood what Ms. Cameron said, she said that there was no mutuality, in part because her client, I wrote down, is being forced to arbitrate with third parties unknown to her client at the time he entered into this agreement. And did I understand her to say that that provision isn't applicable to Provenza? Is that why? I don't think she said it wasn't applicable, but Provenza is named as an intended third-party beneficiary in the agreement, so that argument would not apply to Provenza. So that it's your statement that Mr. Edwards could have required Provenza to arbitrate any number of claims against third parties. Is that how you understand this agreement? No, Your Honor. I don't think the contract goes that far because Provenza is not a party to it. But again, under traditional third-party beneficiary analysis, the court, at least maybe I think in this case, and certainly in the Moore and St. Rose case, found that Provenza was a donor third-party beneficiary. Of course, donor third-party beneficiaries don't have corresponding obligations unless they intend to invoke or attempt to invoke rights under the contract, and then they do. So I'm asking because it's just a new thing. So that although Mr. Edwards was bound to arbitrate a claim against Provenza, are you saying Provenza wouldn't be bound to arbitrate a claim against Mr. Edwards? I'm sorry, Your Honor. I think I misunderstood your question. Yes, Provenza wouldn't be bound to arbitrate the claim if Mr. Edwards initiated the arbitration. Well, I don't know. What if they initiated it? I beg your pardon? Would they be bound if they were? If Provenza initiated it? Yes, they would be bound by the arbitration. Absolutely, and that's what I should have said, Your Honor. I mean, if you claim that Mr. Edwards did some work poorly, for example, I'm just trying to think what kind of claims Provenza might have, then you could bind him to arbitrate that? I could bind Mr. Edwards to arbitrate that? Yeah. I don't know. I'm trying to find out the scope of what we're talking about. In any arbitrable issue that falls within the scope of the agreement, and there are categories of definitions, as you'll recall, Your Honor, Mr. Edwards would be obligated to arbitrate against Provenza. And would Provenza be bound to arbitrate against Mr. Edwards? Provenza would only be bound to arbitrate against Mr. Edwards if, as a donor, third-party beneficiary, it attempted to invoke any of its rights under the contract between Mr. Edwards and White. And if it attempted to do that, then yes, it's bound to arbitrate as well. And there you would have mutuality. May I just ask you, the district court is really an article for federal district court. Local Virgin Islands law gives it the judicial power of the territory. But yes, this is a diversity case. Could you comment on that? I would really appreciate that. Your Honor, as a Texas lawyer, I cannot figure out all this revised organic act and other stuff. Here's my sense of it, though, that between the amendments in 84 to the revised organic act and then what the Virgin Islands legislature did in 91, as this court has found, they divested the district court of jurisdiction over local law issues. And in one of your cases, I think, Parrott, you said that that basically put the district court here on the same footing as district courts in the states. And getting to that, I don't know that I would get bogged down in technical differences between articles and administrative separations, et cetera. The bottom line is that if you have the district court here feeling that it's at liberty to make or construe local law differently from how the superior courts do it, then you will have inconsistencies and contradictions in the law. You will have forum shopping. You will have every bad thing that goes along with that. Thank you, Your Honors. Okay, thank you. We will take this matter under advisement. Thank you. Yes, of course. That must be, people have asked that yesterday. That must be a local custom. Nobody ever asks us at home if they just leave. But it's very polite. Of course you make the excuse. Thank you. Thank you, Your Honors. It was very nice to be with you today. Thank you. We hope you enjoyed the trip.